The Court now will call 116730 in the Marriage of Iris Turk and Stephen Turk. Are the parties ready to proceed? Good morning, Justices. Good morning. My name is Howard Levine. I was the lead attorney for Steve Turk in the Iris and Steve Turk case. And just going through a few of the salient facts, which I'm sure you're familiar with, we had a, this was a post-decree case in which the issue of custody was the primary issue throughout the case. There was a 604B, an evaluation, and after some court hearings, primary sole custody was awarded to Steve Turk actually by agreement. He had received temporary custody earlier, but the final order was by agreement. The issue in this case becomes, or is, after he received sole custody of both children, two boys who at that time I believe were 14 and 12, they're probably 16 and 14 now, we had a hearing by representation in front of Judge Harris at which point 13-3s were exchanged and Judge Harris ordered Steve Turk, who had sole custody of both children to pay child support to the non-custodial parent, that being Iris Turk, without making certain findings. But it's our position that number one, if you look at the statute itself, Section 505 of the Act is clear in a number of areas, and I believe that if you look at 505, you will find that although it indicates that both parties have a duty of support, that particular matter could be addressed and differed. Throughout the statute, throughout Section 505, the various parts of it all indicate and set forth the words custodial parent and non-custodial parent. In 505A2, you'll find the financial resources and needs of the custodial parent, the financial resources and needs of the non-custodial parent are all factors that the court considers when awarding support from a non-custodial parent to a custodial parent. We have a guideline statute in Illinois which provides that a non-custodial parent pays a certain percentage of his or her net income for support. In this case, there were two children. The guideline number would have been 28%. During and if you go through the statute consistently, in B6, it indicates if a non-custodial parent was not properly served with discovery of financial information relating to the non-custodial parent's ability to provide support, non-custodial parent fails to comply, it means in essence that the non-custodial parent is the person that the court or that this statute portended to pay support to a custodial parent. In this case, my client has been paying all of the child's needs, has been supplying all of the child's education and health care, and has been paying all of the child's bills. But the court ordered him to pay her child support, which I believe is not in keeping with the statute itself and doesn't follow the case law of the state of Illinois. Mr. Levine? Yes, Judge. Isn't the purpose is in the best interest of the child and under this circumstances, didn't the child support suggestion is referring to the actual time the child spends with the non-custodial? Justice Burke, yes and no. First of all, there's two children. One spends 100% of his time with his father and doesn't see his mother, and there's a second child that spends approximately 50% of the time with the mother, but the father has both children for approximately 75% of the time if you average it out. So it isn't one of those cases like Cesario, which was cited by my opponent, which was a split custody arrangement. This was not. This was sole custody in my client, and by the way, under the statute as it's set forth right now, the amount of time the child spends with one parent might give that parent a deviation from the percentage, but you can't deviate past zero. The court found no deviation, and the trial court didn't even figure out what Mrs. Turk's actual income was but didn't give what a guideline support number would have been because she had an obligation to pay. Is it your position that there is a bright-line rule that when he is a primary custodian that she's not entitled to child support? It is because I think that's what the statute portends because all of the provisions in 505 state non-custodial parent. As an example, one of the things says if the non-custodial parent fails to comply with certain discovery, and that's in 505B6, I believe, fails to comply with discovery, then subpoenaed evidence can be used without having to set any method of getting it in because the non-custodial parent is the one charged with the obligation of support. There is nothing in the statute, and there's another case called Shraft, which is an Illinois case, 5th District, which I would point out to the court in the Shraft case. The Shraft case was a little different than this case, but in that case, there was one shot. The child lived with the mother and moved to Florida. The child came back from Florida to Illinois and lived with the father. In the Shraft decision, which I'm attempting to find at this very moment, the Shraft decision provided that a father's obligation to pay child support pursuant to a child custody order entered in the dissolution terminated when temporary custody was awarded in favor of the father. And they cite both 505 and 510. May I ask a question about the nature of the order here? Sure. I mean, you just talked about changing the temporary custody, I think is the expression you just used. Earlier you talked about split custody. There's some discussion about joint parenting agreement. I'd like to know exactly what is it that we have in front of us? What is the order that decided how this child was to live with its parents? The order is sole custody in Steven Turk. And what, in terms of the mother, what order is there as to her? She is the noncustodial parent. Is there a visitation order? There is. Okay. So when you talk about temporary custody, split custody, this is sole custody and visitation. Correct. I'm sorry if I didn't make that clear. It's because I'm jumbled with too many facts to try to give you at the same time. But, yes, it's sole custody, visitation. One child visits close to 50% of the time. Other child doesn't visit except maybe at dinner once a month. Mr. Levine? Yes. Was that permanent or temporary? Permanent. And was that the one in 2010, November? That order was not entered. The November 2010 order was a temporary custody order. I don't believe the final order in this case was entered until 2012. Well, I'm talking about the order that's at issue in this appeal. The order that's issued in this appeal is the July 2012 order, which was the order that granted sole custody to my client and ordered him to pay child support anyway. Okay. The fact that I'm trying to keep track in my mind is when it was changed from 23, I think it was 2388 to 1600. What happened then was we were going through the case and we were having a series of temporary hearings. I had filed a motion to terminate the support. We had arguments, and the judge reduced the support at the time that he ordered temporary custody of the children but continued to make my client pay it over my objection, but that was his order. And the order, remember, Mrs. Turk had maintenance for three and a half years, and at the end of the three and a half year period, her maintenance terminated. So there was no way that the court could order her, because this order is tantamount to giving her maintenance, except she's not entitled to it because she's barred after the 42 months. Now, you suggested earlier that perhaps one of the remedies might have been to reduce the father's amount of money by a certain percentage. And so as opposed to giving the mother an amount when the child is with the mother. No. What I said is that the court could deviate. The mother has a duty to support. And let's say the mother had $10,000 a year of income. The court still had to make a finding where 28 percent of the net of that would have been, and then it could have deviated downward, perhaps to zero. But you can't deviate past zero. And there's a couple of, as the court knows, there's a couple of informative out-of-jurisdiction cases that the appellate court used, one of which was a Pennsylvania case, which doesn't have a statute anywhere close to ours. It's more of a blended income statute. And there's a Tennessee case, which I would analyze, which is Gray v. Gray, which is cited in our brief, which is a guideline statute and is a statute very similar to Illinois. I think the appellate court probably should look for one jurisdiction where this particular, where the court would order it. But remember, we have a guideline statute right now in place and the one that was in place at the time. So am I understanding you correctly? Not only they shouldn't have given her any child support, the court erred in not ordering child support from her? I thought so, yes. Oh, okay. Thank you. There is a large disparity in income, but the duty of support is both sides. My client is paying support for his children. He is supporting them in every possible way. And in addition, he is giving money to the noncustodial parent on a monthly basis, which amounts to maintenance. It just isn't child support. And if you read the statute carefully, noncustodial parents pay child support to custodial parents. That's what our statute contemplated. That's what the statute says. And although it says that both parties have a duty of support, it does say that in the first paragraph. That may have been put in for a lot of reasons legislatively. But remember, it was done in the statute. It says Section 601. Section 601 of the Act is a provision which says that a parent, someone other than a parent, could sue both parents for support if the child is in their custody under the provisions of 601. Now, Justice Burke asked you a question earlier about the best interest of the child in the consideration. So in the trial court assessing how the support obligation goes, it would not be proper for the court to consider that there's a great disparity in the income here and that the noncustodial parent may need some resources in order to provide funds for the child to visit. In other words, that there will be enough groceries on the table for, you know, to prepare a meal. It would not be proper to consider that. I don't think it's part of the statute. I think that if you look at the provisions, the only thing the court can do is deviate from the guideline amount that she would have to pay him. And the court could deviate to zero, but I don't think the court has the authority under the statute as it's written to provide that a noncustodial parent receives child support from a custodial parent. If the maintenance issue had been open, perhaps they could have awarded maintenance, but maintenance had been barred by time as this was supposed to pre-proceed. What is the recourse then for the trial judge, counsel, in keeping with Chief Justice Garment's question? You know, the destitute mother that in a case in which they're 50 percent of the time has a child. Has one of the children. Right. It would be to deviate from the guidelines in that order for her to pay him support. All right. What if deviating down to zeros, using, again, her example, doesn't put food on the table? Does the trial court have any recourse in that option? In my opinion, based on the statute, no. I mean, I think the trial court is bound by the law, which says that noncustodial. If you look through the statute, it's constantly restated. Custodial parent, noncustodial parent. And the noncustodial parent is the one that is ordered to pay the support. All of the sanctioned provisions, including judgments that may be entered for arrearages and support, all involve the noncustodial parent. Justice, if you took your position, then the statute would have to be amended to provide both parents. It doesn't provide it. It doesn't. What would happen? Not to analogize too much, but I'd like to just make this statement. Let's assume my client was ordered to pay the support, which he was, and didn't. She would have no ability to collect it because there is only provisions what happens when the noncustodial parent doesn't pay. The statute is clear in that regard. I'm not suggesting to the Court that everyone can look at it and say, gee, this is a person with no ability to pay, which, by the way, in this case, isn't the fact. But I believe that if you read the statute carefully, there is no way that a noncustodial parent should receive support from a custodial parent. I don't think it was intended by the legislature. You take the position that your client has 75 percent custody, 100 of one kid and 50 of the other. Yes, 75 percent of the time, yes, sir. Right. What if we separate that and just look at the one child? That's 50-50, right? Well, but at the same time, remember that visitation and support are not connected. And even in the statute, if you look at Section 505, it's really interesting. And I've been doing this for a long time, and I understand where you're coming from. But if you look at Section 505, the section itself — I'm glad you understand. I don't know where I'm coming from. I'm just asking questions. Sorry, Justice. But under Section 505, all of the provisions of the act itself go to the issue if you want to deviate from guidelines. In other words, you have a situation like you've indicated. The most the court can do is deviate down to nothing. And it considers the financial resources and needs of the child, the financial resources and needs of the custodial parent, the financial needs and resources of the noncustodial parent. And it says if the court deviates from guidelines, the court's financial state, the amount of support that would have been required under guidelines, which wasn't done in this case, if determined, the court will then include the reasons for the variance in the guidelines. But it never says that there isn't an obligation on the noncustodial parent to pay support. It just means you can bring it down to zero. And that's in that statute. Mr. Levine, though, it doesn't say in 505 that the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for his support? It does, but I can explain that. If you look at the statute, the front part of the statute, I know I'm running out of time, says 501 or 601 of the Act, if you read it, in the proceeding for dissolution. Under 601, there is a provision that says a person not related to the child who has possession of the child can file an action for custody and for support from both parents. So I believe that that particular provision, because it's the only place in the statute that they do that, if you stop there, you might say there's no way that I'm wrong. But if you read the entire statute, every other provision says custodial and noncustodial parent, and I think that provision was put in purposely, and it's done under both 501 and 601, which is the custody provision. So I think that's the reason for that, Justice Burke. Is your position that the statute is ambiguous or that it's clear? I think it's clear. The section that you just alluded to and Justice Burke referred to, I think, goes on to talk about the number of factors or various factors that the Court should consider in making an order of child support custody is not one of those factors to be concerned, the Court is to be concerned with. In Section 505.2, it says that the courts will determine the minimum amount of support by following the guidelines, percent of supporting parties' net income, that's all it shows. And then on the next page, it tells you what you have to look at if you're not going to use the guidelines. If you don't use the guidelines and the Court wants to deviate, which it can, then they have to go through all of A, B, C, D, E, and F. And then they're allowed, let's say she was supposed to pay 28% of her net, whatever that might have been. It should have been deviated down to, say, 2% of her net. But they can't deviate down to, they can't deviate past zero. And it says if the Court does deviate, which this order, I'm not sure what it was, then they have to make a finding of what 28% of her net would have been. It was never done. My argument is strictly construing the statute itself, the Shroff case, and I think I can differ the Cesario case from this case. So I would ask you to review carefully the statute, review all the provisions of 505, and you will see that the words custodial and noncustodial parent are constantly used in the payment and enforcement of the child support order. That's what our legislature meant. If they meant something else, they would have said something else. That's why I think the statute is eminently clear, and that's why I told the judge I thought he was wrong when he entered the order two years ago. Thank you. Ms. O'Connor. Madam Chief Justice, counsel, may it please the Court, good morning, Your Honors. My name is Gail O'Connor. I represent the aptly Irish Turk. Your Honors, in listening to Mr. Levine and the appellant's argument, his interpretation of 505 differs from the plain language of 505. 505 of the Illinois Marriage and Dissolution of Marriage Act is not unclear. It is not ambiguous. It is plain on its language, and it does not take into consideration custodial allocation when considering the best interests of the child and the need to fulfill the duty to support the child. The language written in 505 provides that the Court may order either or both parents owing a duty of support to a child with a marriage to pay an amount reasonable and necessary for the support of the child without regard to marital misconduct, not without regard to custodial allocation. And I think it's very important that we think that we construe custody not in the lay terms that many of our clients come to us with. What does custody mean? Custody is decision-making authority. It's not a possessory description. How do you respond to Mr. Levine's argument that the statute only provides for collection of remedies for the noncustodial? I believe that he's in error as he reads the sections. If you look through the subsections, there are a variety of pronouns and descriptive terms to be used for enforcement. The sections use supporting party, respondent, spouse, party owing a duty of support. It – there are sections that it says noncustodial. What I would say to you is that clearly legislature knew that noncustodial could be an issue. And if they really intended, if the legislative intent was to preclude and prescribe support being paid to the noncustodial parent, when a court determines in its discretion that that is necessary to fulfill the best interests of the child, then it would have been in Section 505a. And that's even, I think, redoubled by the recent amendment of the statute, which included 825 – 2.5, excuse me, which added additional expenses, which the trial court has the discretion to allocate. So the addition within, I believe, the last 12 months, maybe 18 months, was Section 2.5, the court in its discretion, in addition to setting child support pursuant to the guidelines and factors, may order either or both parties, parents, excuse me, owing a duty of support to a child of the marriage to contribute to the following expenses. They didn't say custodial parent. They didn't say noncustodial parent. They said the duty of either or both. Kagan. I ask you a follow-up on Justice Khamar's question, though. Specifically, Section 6 appears to be the enforcement statute, correct? It's one of the enforcement statutes. Well, it only uses the expression noncustodial. Correct. I believe that it is a term that they used. They used a variety of terms. They used respondent for service. Specifically, in the enforcement section, it only refers to noncustodial. You agree with that? But that's that one section of enforcement. It's not all the enforcement statutes. There are other. What other section? Can you direct us specifically to a section that, about enforcement that uses a term other than noncustodial? Yes, Your Honor. I may. I can. Under Part B, under following A5B, failure of either parent to comply with an order to pay support shall be punishable as in other cases of contempt. If a parent who is found guilty of contempt for failure to pay with an order of support is a person who conducts business or is self-employed, that's where he goes into the noncustodial. But it starts with a parent found guilty of contempt or self-employed. And it does refer to noncustodial. I'm certainly not going to say I don't see that, but I also see a variety of other pronouns, payor, obligor, party owing a duty of support, parent. The body of the text, the part of the statute which confers discretion on the trial of child support to assess child support is Section A, which provides that it's either or both parties who owe a duty of support to the child. And our courts, the progeny of case law, the case law on child support is enormous, has held that supporting a child is a joint and several obligation of the parties. Do we have evidence in the record of Iris' payment of financial expenses for the child? There were submitted, pursuant to court order, financial disclosure statements pursuant to local court rule 13.3.1, which is a detailed financial affidavit which lays out your income and your expenses. Those disclosure forms were submitted about seven years ago? I think that, admittedly, I believe that the ones that the court considered at the time of the hearing were stale, but those were the most recent ones the court had, and I don't believe that there was an objection from either party to the submission of those 13 cases. If we were to agree that the statute permits you to receive child support as an uncustodial parent, would remand be appropriate to get the party's current financial conditions? I don't think it would necessarily be inappropriate or appropriate. I don't believe that it is necessary in this case, as we are dealing with such a de minimis amount of support and the cost of returning to litigation and keeping the support. Even though it's seven years old? Current financials are important, and a remand would certainly bring current financials to bear. And I think my client would actually be more successful on remand if current financials were brought to bear. The children are older, they have more expenses, and she does have possession of the younger child an equal amount of time. And she does have possession of the older child more than what was indicated by the appellant, although it is not near that which is the younger child, but it's for the purpose of normalizing relations. We're working back to what it was before. When this case was first finished in 2005, Mr. Turk enjoyed parenting time on an almost equal basis, save for two overnights a month. It was, even for the time, an atypical schedule. And he was paying $4,000 a month in unallocated support. When this portion of the litigation started post-decree, unallocated support terminated and he commenced paying, in round numbers, $2,400 a month in support for two children, which he had possession of nearly 50 percent of the time. And there was a slow erosion of the amount of support as the case progressed. But the fact of the matter is there's been a finding that my client is near unemployable. She makes minimal amounts of income, anywhere from $6,000 to $10,000 a year. Mr. Turk has a history, a longstanding history of employment at the same company and earns, in round numbers, close to $150,000 a year. Nothing has changed for the child here. The best interest of the child still needs to be addressed. The youngest child, all that's changed in his life with all this litigation is that he spends two extra overnights per month with his father. Would a decision affirming the appellate court, in this case, open up a situation where, in the typical situation, custody is what's looked at in determining child support? Are we going to open up the domestic relations divisions to cases in which now there's filings with respect to income rather than just looking at the custody situation? I don't believe that the proverbial floodgates will be open with this because this is atypical. And 90% of the cases that move through the court system are typical. You have a residential parent who has primary possession of the children also. 50% schedules absent an agreement of the party are hard to come by by court order. So something like this is still atypical. And when you have your typical case, if you go back to the legislative history. Isn't that atypical, though, Ms. O'Connor? Couldn't this be used later on down the line if we affirm in the situation where one of the parents is the noncustodial parent, doesn't have much money, but has visitation in the summer or visitation period? Couldn't it be used to say, hey, if the best interest is going to be used, then the best interest should be used in each and every circumstance, and then we take a look at income again rather than custody? And the reason that you're saying that it's atypical is because in the typical setting, right, the trial judge will determine this matter based on custody, not on income. Not necessarily. And I think we have to get back to this idea of what custody is. Custody is decision-making authority. To tie decision-making authority to monetary benefit or obligation I think would have even more disastrous effects. You will have people, the moneyed party, driving litigation for custody because it has monetary outcome for them, that they will not be prescribed from having to pay support. And that will drive litigation not for the best interest of the child. Tying decision-making authority. I get to decide where the child goes to school. Therefore, I don't have to pay you support. Or even worse, you have joint custodians who for any number of reasons could decide that this parent will be the residential custodian. Maybe there's a better school district. Maybe that parent has the better ability to take the child to 8,000 different hockey games in, you know, faraway places. That person is going to be the residential custodian. But that person may still, may or may not need money. The idea to tie without discretion of the court, to strip our trial courts of the discretion to look at a case and assess a case and say this case is atypical, this case does not look like the rest of you sitting in my courtroom today, I think would have disastrous effects. And Mr. Levine would say that there is discretion, just discretion to knock it down to zero, not past zero. But that's not, the statute doesn't say that. I appreciate Mr. Levine's argument. I may very well have made the same one if I was on the other side. But that's not what the statute says. The statute says either of both parties, intermarriage of Rye, intermarriage of Steadman, support is a joint and several obligation of the parties. And nowhere in the statute and nowhere in the case law does it say otherwise. You have to show that she is actually paying expenses for the child in order to be entitled to this? Through the tendering of 13-3s. Child support is very interesting. There is a prescription against having to account for how you pay child support, what you do with your child support, excuse me. And child support goes for this amorphous host of expenses. It's a portion of overhead. It's a portion of groceries, of utilities, of gas in the car, of let's go to the movies on Friday night. So. How is it different than maintenance? Well, if this was maintenance, it would be a lot more. This is a diminutive amount of money. No, it's not. She has the obligation to support herself. And the suggestion that $600 a month is supporting her versus her child, she has possession of a teenager 50 percent of the time. And clearly that's what the appellate court wanted to have a basis for why the support was ordered, although I think the math, although not sophisticated, can be followed pretty easily. $2,400 a month was guideline for two children. Take it down 50 percent for one child. And then you half it again for 50 percent of the time. You get down to 600 in round numbers. So it's not a sophisticated thing. And not everything we do on a day-to-day basis is sophisticated. But I don't think the number is necessarily pulled out of thin air. But, no, it's not maintenance because it is substantially less than what she needs to support herself. It is substantially less than, quite frankly, what she needs to equally support a child and keep the lifestyle of the child on par with when he is with his father. Economic marginalization of a child, economic marginalization of a parent is a very serious consequence in custody cases. And to tie without discretion of the court child support to custody will absolutely prevent people from settling custody cases. Because that's your overarching issue, is that we should say that our interpretation of the statute is that the custody is not determinative in terms of support. Absolutely not. They have no relationship with each other. Where do you find that in the statute? I find it in the plain language 505, where it says the court may order either or both parents owing a duty of support. And then under sub 1, even when it lays out the guidelines, it says the percentage of the supporting parties net income. It doesn't say noncustodial parents' income. It says the supporting parties. So you can see that most of the statute, and we can count them, I have them highlighted. Most of the references say noncustodial. Occasionally it says parent. Some places it says respondent, something like that. But many, many, many times it's called noncustodial. Are you trying, in terms of statutory interpretation, are you telling us that the statute is ambiguous? I don't believe it's ambiguous, no. Because I believe the umbrella language of A and then 2.5 are neutrally drawn, and they're broadly drawn to allow for the discretion of the court to consider how to satisfy the duty of support owed to the child. And do we read out all of those, and I don't have them counted, but eight different references to the term noncustodial? Do we read that out of the statute? I don't think you need to read them out any more than you need to read out how a respondent is specifically served with a notice that there's a failure to pay child support. To suggest that a trial court would be stripped of their discovery tools, a trial court would be somehow stripped of their right to pierce the corporate veil if it was the custodial parent who had to pay support, I think reduces it. It's reductio ad absurdum. Mr. Levine's suggestion to this Court is that you would take each subparagraph and that subparagraph is definitive, but I believe that that creates superfluous interpretation and wording within the statute. I don't think you need to read it out. I don't think you need to ignore it, but I don't think it creates the totality of the statute. The statute's. So help me. So it says B, whatever this is. This is about discovery and it talks about the obligations of discovering assets of the noncustodial parent. How do we read that? The noncustodial parent and the person to persons or business entities maintain records together and whatever. It goes through all of the discovery of assets that the noncustodial parent has to bring forward. How do we read that under your interpretation? We don't care that it could be either parent? I believe so. I honestly believe so because in the language right above it, it says that the court may further order any part of the earnings of a parent during a sentence of periodic imprisonment. If a parent is found guilty of contempt, I think that it is perhaps a poor choice of words, a poor reduction of words, but it's not definitive and it doesn't limit the precatory language of the statute because it's repeated. If the legislature truly intended to tie support to custody when they amended and added the additional allocation of expenses, they would have done it then. They wouldn't have said without regard to marital misconduct. They would have said without in consideration of custodial allocation, custodial award. But decision-making authority does not necessitate a child support award. Your Honors, I believe that the interpretation of in re merit of Schaaf out of the Fifth District and Cesaretti are also inappropriate. This case is absolutely analogous to in re merit of Cesaretti. And the appellant's focus on the idea that because it was a temporary custody award makes this not analogous misinterprets the case at hand. That case, the trial court, after a contest, awarded equal parenting time of a single child between two parties. Could you help me explain that to me in terms of the language of the statute? Yes. What do you mean equal parenting time? Do you mean sole custody and visitation? Those are the terms of the statute. You're right. I apologize. Our language has evolved within the practice. From visitation to parenting time. It's rare that we put visitation in any agreement or even order from a court. But that is how the statute is still written. Yes, it is. So, yes. So the court ordered equal visitation. The parties in Cesaretti visited equally with the child. The court awarded temporary custody there because the parties had a history of noncompliance with court orders and she wanted to keep a leash on the case and have the people back in her court. The court there specifically found, though, that when she ordered equal visitation between the parties but gave father temporary custody and ordered him to pay child support to then the temporary noncustodian, it was not erroneous. There was no question that support was necessary because there was a disparity in earnings. Schaff is not a ñ I think Schaff is limited by its facts. You had a parent in a different state who had a history of not seeing her child, no voluntary support, no gratuities, no visits, no presents. And the court there held that it defied their common sense in dicta that when physical and legal custody had been placed with a single parent, that child support should not go to the noncustodial parent. But they qualified that because in that case, limited to those facts, they could see no reason why. They understood, even in the context of Schaff, that there could be a reason why a noncustodial parent could be entitled to support. But in that case, under those facts, it didn't merit it because that father had possession of the child, 100 percent visitation, if you will, 100 percent of the time. She shared no burden of the expenses. Here, Ms. Turk, the ñ she has 50 percent possessory time, visitation, if you will, the judgments ñ the post-decree judgment says parenting time, of the child. And there are expenses to be had with that. She has been found to be unemployable. She has nominal income. And Mr. Turk has significant income comparatively. The amount ordered is enough to keep her being able to provide for the child, not in a similar lifestyle, quite frankly, but enough so that that child is not marginalized and that she is not marginalized and can meet with a little bit more resources the best interests of the child. I do see that my time is up, and I appreciate your time today. Thank you. Thank you. I appreciate Ms. O'Connor's position, but I think she was arguing equity in that law. The ñ I would say that if you read the statute carefully, the only enforcement provisions, Section 6, use noncustodial parent, which means that they meant that the noncustodial parent is the parent that pays support. The pronouns used in the other sections don't contradict the limitation of support only to the custodial parent. A question was asked. I think that this is not a typical case. I think if the court affirms the floodgates are going to be open to any noncustodial parent that wants support from a custodial parent who earns more income, you are going to completely ñ this statute never portended that in any way. You can read this statute from the front to the back. It portended one thing. The custodial parent is also the parent that receives the child support. The statute is written like that. The noncustodial parent pays a percentage of his or her net income. That is set forth. The custodial parent, the noncustodial parent, can ask for a deviation from guidelines either upward or downward based upon the respective incomes of the parties. And the court would find the deviation after a hearing and determining what the amount of guideline support would have been and how far they want to deviate. But this is nothing more than a maintenance order disguised as a child support order that was entered by a judge, which I believe contradicts the statute. If you look at the ñ if you look at the legislative history, the statute was amended a couple of times in both í88 and í96, and the words noncustodial were submitted into these various provisions. Statutory interpretation of this case is such that you canít order a custodial parent whose duty of support is being discharged by the fact that heís paying all of the expenses for the child to pay child support to a noncustodial parent. In Shaft, itís quoted, ìCommon sense dictates that once legal and physical custody is placed in one parent, that custodial parent has no obligation to pay support to the noncustodial parent.î Ms. OíConnor can dance around that point any way that she pleases, but thatís what Shaft said. Itís a Fifth District case, and itís probably the closest case to this case, although the facts are not analogous. To accept this argument would read out the 16 times that noncustodial parent is specifically used in the statute if you take it from the front to the back. This is a perfect case to reverse. This is, in essence, a situation where, frankly, without arguing the facts, Ms. OíConnor brought up her clientís inability to support herself. She lives in a $600,000 home, which is provided by a trust from her brothers and her family. She doesnít pay a mortgage. She drives a new car. That all went in. I argued that in front of the judge. It is absolutely incongruous, incongruous, to order my client to support both children financially and then order him to pay the noncustodial parent, even though she has a certain amount of time with one of the children, support as well. I would suggest that if you look at that you can differ Cesar Reddy, which was raised by counsel, because in Cesar Reddy it was a six-month order of temporary custody, which would have been under 501 of the Act and not under 505. 501 gives you a lot more discretion because thatís when temporary orders are entered and the court can allocate expenses until a judgment is entered and custody decided. When someone gets custody, sole and complete custody, the other side pays support in a certain amount, whether itís guidelines, whether itís under guidelines, whether itís over guidelines. And this case, to me, it was clear in the trial court. I didnít get a chance to argue it in the appellate court because they ruled, but I think itís clearly a case that needs to be reversed. It will cause nothing but havoc in the domestic relations division because it in fact will emasculate the entire statute. Justices, I would ask you to read it carefully, go over our brief, go over the Schaff and the Cesar Reddy cases. I suggested that the court pick one out-of-state case, the appellate court, in order to sustain its position. Read it, and I would ask you to reverse this case outright and deny the right of a court to order a noncustodial parent to pay support. Thank you. Thank you. Case No. 116730, Henry, the Marriage of Iris Turk and Stephen Turk, is taken under advisement as Agenda No. 11. Mr. Levine, Ms. OíConnor, thank you for your arguments today. Mr. Marshall, the Illinois Supreme Court stands adjourned.